### WILSON ET AL. *v.* DAWSON ET AL.

PRINCIPAL AND SURETY.—*Bank.*—*Deposit Under Special Agreement.*—A person, who was indebted as principal upon a promissory note to a banking firm, after the maturity thereof deposited in the bank of said firm, where said note was payable, and checked out, sums amounting to more than said indebtedness, under a special agreement between the depositor and the bank that the former should buy cattle and give the sellers checks payable or to be presented after the buyer had sold the cattle and deposited the proceeds in the bank, and that the bank should apply the money so deposited to the payment of such checks exclusively.

*Held*, that the money so deposited could not have been applied by the bank to the payment of said note, and that a surety thereon, who was not a party to said agreement, was not released by the failure of the bank to so apply said deposits.

From the Warren Circuit Court.

*H. W. Chase, J. A. Wilstach* and *F. S. Chase,* for appellants.

*W. C. Wilson, J. H. Adams* and *W. P. Rhodes,* for appellees.

DOWNEY, C. J.—The appellants, Alexander Wilson, Joseph S. Hanna and Henry H. Hanna, partners as Wilson & Hanna, sued the appellees, Henry C. Dawson, Charles J. Dawson and others.

Henry C. Dawson was indebted to Wilson & Hanna upon several promissory notes, amounting to something more than fifteen thousand dollars, on all of which, with the exception of one for twelve hundred dollars, the said Charles J. Dawson was surety. Henry C. Dawson made a mortgage to Wilson & Hanna, on certain real estate, to secure the payment of said notes, in which his wife joined. There was a mistake in the mortgage in describing a part of the real estate intended to be mortgaged. A part of the land embraced in the mortgage was afterwards released by the mortgagees from the lien of the mortgage.

The notes not having been paid at maturity, this action was brought by the appellants against Henry C. Dawson and

wife and Charles J. Dawson, to recover judgment upon the notes, to reform the mortgage, to set aside the release of the lien of the mortgage on part of the real estate, which, it is alleged, was fraudulently obtained, and to foreclose the mortgage. The other defendants were holders of junior incumbrances on the mortgaged premises.

Charles J. Dawson, the surety, pleaded that after the maturity of the notes, which were payable at the bank of the plaintiffs, they being private bankers, Henry C. Dawson, the principal in the notes, deposited money in the bank of the plaintiffs in a sum exceeding the amount of the notes, which the plaintiffs suffered to be checked out and withdrawn by him, and he, Charles, claimed that this operated as a satisfaction and discharge of the notes so far as he was concerned.

The plaintiffs replied in several paragraphs, substantially that the said Henry C. Dawson was a dealer in cattle, etc., but had become embarrassed, and had no means to pay said notes, or to pursue such business, and that it was agreed between them and said Henry C. that he should buy cattle, etc., and give the sellers checks payable, or to be presented, after he had sold the stock, etc., and had deposited the proceeds with the plaintiffs, and that they were to apply such moneys so deposited with them to the payment of such checks exclusively; and that the money alleged by the defendant Charles to have been received and paid out by them was the money received and paid out under and in accordance with this special agreement, and no other.

The court, on demurrer to the reply, held that the same was insufficient. This ruling, to which there was an exception, and which is assigned as error, presents the question, and the only question, necessary to be decided.

Had the deposits been made by the principal in the note generally, and not under a special agreement, we need not decide whether or not the surety could have claimed that the money should have been applied to the payment of the debt for which he was liable, the debt being at the time due

. and payable.    But see *McDowell* v. *The President, etc., of The Bank of Wilmington, etc.,* 1 Harring. Del. 369; *Dawson* v. *The Real Estate Bank,* 5 Ark. 283; Morse on Banks & Banking, 34.    It is clear, we think, however, that as the money in question was deposited under a special agreement that it should be paid out and ·used only in satisfaction of the checks drawn in favor of the persons from whom the cattle, etc., had been purchased, from the sale of which by the principal in the note the money had been derived, it could not have been rightfully applied to the satisfaction of the notes on which the action is predicated.

Counsel for appellee suppose there is some hardship to the surety in this rule, as under it the creditor will be allowed to part with security which he had in his hands for the debt of the principal to the injury of the surety. This argument assumes the correctness of the controverted position; that is, that the money might rightfully have been applied by the creditor, a position which we think cannot be sustained.    It is a general rule, that funds deposited in a bank for a special purpose, known to the bank, cannot be withheld from that purpose, to the end that they may be set off by the bank against a debt due to it from the depositor. The claim of a general lien by the bank would be inconsistent with its special undertaking.    Morse on Banks & Banking, 34, *et seq.,* and authorities cited; *Bank of U. S.* v. *Macalester,* 9 Pa. St. 475.    It is evident that the surety loses nothing, for the reason that the creditor parts with no advantage in which the surety had, at any time, an interest. Had it not been for the special agreement made by the bankers, it may be presumed the money never would have been deposited with them.    Counsel suppose that there was no consideration for the special agreement.    But we are confident in the statement that this position cannot be sustained. The deposit of the money is the consideration for the agreement as to its application.    Again, counsel urge that Charles J. Dawson, the surety, was not a party to the special agreement.    We think there can be nothing in this fact, unless it

be that it is a reason why he can make no claim under it.

Again, it is urged that the matters set up in the special paragraphs of the reply might have been given in evidence under the general denial therein, and that, for this reason, there was no available error in the action of the court in sustaining the demurrer. We are of a different opinion. It seems to us that the affirmative or special paragraphs of the reply set up new matter not properly admissible under the general denial in the reply.

The judgment is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.

Petition for a rehearing overruled.